Per Curiam:
This case was referred to Trial Commissioner William E. Day, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on March 25, 1966. Exceptions to the trial commissioner’s opinion and recommended conclusion of law were filed by the defendant and the case has been submitted to the court on defendant’s brief and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the trial commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover disability retirement pay from the date of his final release from active duty, less amounts received from the Veterans Administration, and judgment is entered for plaintiff to that effect with the amount of recovery to be determined pursuant to Buie 47 (c).
Commissioner Day’s opinion,* as modified by the court, is as follows :
This is a case in which the plaintiff sues for disability retirement pay from the time he was released to inactive duty *212 in the Naval Reserve not for disability. The question for decision is whether or not the action of the Board for Correction of Naval Records, in denying him the relief he sought was arbitrary, capricious, or not supported by substantial evidence. Although the defendant has pleaded the bar of the statute of limitations, 28 U.S.C. 2501, at pretrial this plea was withdrawn.
The plaintiff, after a short period of enlisted service in the Navy, prior to World War II, completed training as an aviation cadet and was qualified as a naval aviator. He was commissioned an ensign in the Naval Reserve on June 30, 1942, and began active duty as an officer in the Naval Reserve on July 31, 1942. Tie was promoted to lieutenant (junior grade) and while in this rank, the plaintiff was hospitalized with a kidney infection. In early August 1944, his right kidney was surgically removed. After his recovery from the effects of such operation, the plaintiff, on October 31, 1944, appeared before a Board of Medical Survey at the U.S. Naval Hospital, Seattle, Washington. This Board was composed of three Navy doctors. The Board was of the opinion and recommended to higher authority that the plaintiff should be retained in the Naval Reserve and that he be assigned limited duty within the continental limits of the United States, in a billet not requiring prolonged physical exertion and that he be reexamined after a period of 6 months to determine his fitness for full duty. The Board, although finding the plaintiff fit for limited duty, consistent with his then present disability, found that the absence of his right kidney rendered him physically unfit for full duty ashore or afloat. The recommendation of the Board of Medical Survey was approved by the Chief of the Bureau of Medicine and Surgery of the Navy. In early November 1944, the plaintiff submitted to an examination for flying, conducted by three Navy doctors.
The plaintiff was found by such examiners, to be not physically qualified to perform all his duties at sea but that the limit of duty for which he was qualified was in Service Group II within the continental limits of the United States. He was, however, found physically qualified and temperamentally adapted for duty involving actual control of air *213 craft in Service Group II within the United States. It was also the recommendation of these three Navy doctors that plaintiff be reexamined at the end of 6 months to determine his fitness for return to full flight status. The office of Chief, Bureau of Medicine and Surgery, concurred in the recommendation that the plaintiff be restricted in his flying to Service Group II.[1]
After 6 months had elapsed the plaintiff was reexamined for flying at his then duty station, the Carrier Qualification Training Unit, Naval Air Station, Glenview, Illinois, on May 1, 1945. The purpose of the examination was stated to be “special — 6 mo. after survey”. The report of examination showed the defects incident to the removal of the right kidney but that they were not disqualifying. The plaintiff was again found to be not qualified to perform all his duties at sea but for duty in Service Group II within continental limits of U.S. The flight surgeon’s recommendation as to such duty was approved by direction of the Chief of the Bureau of Medicine and Surgery.
Thereafter, in September 1945, the plaintiff was given a physical examination, the purpose of such examination being release to inactive duty status. Although under history of illness or injury, the absence of right kidney was mentioned, the plaintiff was found to have no physical defects. He was, therefore, found physically qualified for release to inactive duty. Within a few days he was released to inactive duty and placed on terminal leave.
Apparently, as the plaintiff’s terminal leave was about to be exhausted, he requested transfer to the Tegular Navy and retention on active duty pending action upon his request. Pursuant to such request, he was given a physical examination on November 9, 1945, and found not physically qualified for transfer to the Tegular Navy.
Upon the expiration of his terminal leave, he was on November 12, 1945, released from all active duty in the Naval Teserve. Pursuant to his earlier request, he was recalled to active duty on December 22, 1945.
*214 Appearing again before a Board of Medical Examiners on January 17, 1946, the plaintiff was found by such Board to be unable to meet the physical standards for appointment to the Regular Navy because of the absence of his right kidney. The Board’s findings having the approval of the Chief, Bureau of Medicine and Surgery, the plaintiff’s application for transfer to the Regular Navy was denied on February 12, 1946.
Upon his request for further retention on active duty, the plaintiff was permitted to remain on active duty until August 3, 1946, when he was examined for release to inactive duty, found to have no physical defects and therefore, physically qualified for release to inactive duty. He was, accordingly, on that day, detached to terminal leave and on August 22, 1946, he was released from active duty.
Upon his first release to inactive duty, the plaintiff had applied to the Veterans Administration and was found to have a 30 percent disability and was paid compensation for such service-connected disability on account of the removal of his right kidney, from November 13, 1945 to May 25, 1956 (and this has apparently continued to the present) except for the period of his further active military duty from December 22, 1945 until August 22, 1946.
Within 3 months after his final release to inactive duty, the plaintiff was examined in connection with the Naval Reserve Training Unit to which he was assigned. He was found by the examining doctor to be physically qualified for flying, but on January 17, 1947, the recommendation made by the examining doctor was disapproved by the Chief of the Bureau of Medicine and Surgery of the Navy, who found that the plaintiff was not physically qualified for duty involving the actual control of aircraft in view of the absence of his right kidney.
Although the nature of the plaintiff’s active duty in the Navy after his kidney was removed is unclear from the record, one exhibit shows that from the period of March 1, 1946, until August 3, 1946, he had flown some type of aircraft (no doubt in the restricted category of Service Group II) for a total of 145 hours.
*215 In July 1955, the plaintiff applied to the Board for the Correction of Naval Records requesting that his release to inactive duty in 1946 be changed to medical retirement because of the removal of his right kidney during active service. The Board for the Correction of Naval Records requested the Naval Retiring Review Board to furnish it an advisory opinion regarding the plaintiff’s physical condition at the time of his release from active duty “within the contemplation of the then existing retirement laws.” Pursuant to that request and in accordance with general directions to cooperate with such requests of the Board for the Correction of Naval Records which had been issued by the Secretary of the Navy, the plaintiff was afforded an opportunity to appear before the Naval Retiring Review Board and to present any testimony, witnesses or affidavits, with an opportunity to be represented at such hearing by counsel.
The hearing was held as scheduled. Plaintiff was represented by counsel of his choice but did not appear personally. Plaintiff’s counsel made a short statement to the Board calling to its attention the removal of the plaintiff’s kidney in October 1944, and the fact that the Veterans Administration had assigned a 30 percent disability rating to plaintiff’s disability since his release from active naval service, but otherwise relying on the contents of the plaintiff’s medical records, both Navy and Veterans Administration.
The Board recorder made a statement to the Board recounting a conversation he had had the day before with some person in the Bureau of Medicine and Surgery. As a result of that conversation, the recorder stated that in 1946 the Navy had 113 nephrectomies (which means surgical removal of kidney) and that 73 patients were returned to full duty and that the others (40) were for undisclosed reasons not returned to full duty. Continuing, he said that in 1955, of 68 patients who had a kidney removed, 61 were ordered back to full duty and 5 were retired for physical disability, but that these 5 had other physical ailments in addition to the absence of one kidney. The recorder also stated to the Board the substance of his discussion with someone in the Bureau of Medicine and Surgery concerning the insurability of a person *216 with one kidney. He commented upon the fact that 12 years bad passed since the plaintiff had had his kidney removed and there was no indication that the left kidney was involved in any way. He adverted to the fact that there had been several statements by the plaintiff, given in connection with later physical examinations, that he, the plaintiff, was in good health. Attention was then called to the fact that the plaintiff in the 6 months before his release to inactive duty had accumulated 145 hours of flight time in the air. No witnesses were called by the Naval Retiring Review Board. This Board transmitted to the Board for the Correction of Naval Records its opinion that the plaintiff was physically qualified for active naval service at the time of his release from active duty on August 22, 1946.
The plaintiff was thereafter advised by the Board for the Correction of Naval Records of the action taken by the Naval Retiring Review Board in the plaintiff’s case, and that the examination of his naval record and of the material submitted by the plaintiff (two short affidavits submitted with his application to the Board) had failed to establish any basis for further action by the Board for the Correction of Naval Records. In other words, the Board denied his application. He then brought this action.
The court begins its consideration of the legal principles applicable to the facts of this case by reaffirming what it has often stated as to the need of clear and convincing evidence of arbitrary or capricious action, before it will reverse the action of the Secretary or the Board for the Correction of Naval Records which has found a person fit for military service when that person was released to inactive duty. “We cannot substitute our judgment for theirs, as to who is fit to serve in the Army.” Furlong v. United States, 158 Ct. Cl. 557, 563 (1961) and cases cited. It is only where the decision of the board is clearly unsupported by substantial evidence or when there was a noncompliance with applicable laws and regulations, that this court may interfere with the findings of the correction board. Towell v. United States, 150 Ct. Cl. 422 (1960), Furlong, supra.
This court has not hesitated to scrutinize the action of correction boards, and to enter money judgments for amounts *217 equal to retired pay where it has found the correction board action unsupported by substantial evidence. Smith v. United States, 168 Ct. Cl. 545 (1964). Even where, as in this case, “[t]he fact that there is evidence, considered of and by itself, to support the administrative decision is not sufficient where there is opposing evidence so substantial in character as to detract from its weight and render it less than substantial on the record as a whole.” Williams v. United States, 130 Ct. Cl. 435, 441, 127 F. Supp. 617, 619 (1955), cert. denied 349 U.S. 938. See also Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951).[2]
Unlike most physical disability cases, the disability claimed here is quite specific in nature and admits of practically no basis for disputation by those learned in the medical profession. The cold fact in this case is that the plaintiff, a naval pilot, entered the naval service without any disability and while on active duty, had one kidney removed. Here then is a naval flyer minus one kidney. The record is likewise clear that there was no involvement of the remaining kidney. Does the record before the Board for the Correction of Naval Becords contain evidence of a substantial nature to support the ultimate finding of the correction board that the plaintiff was fit for duty at the time of his release to inactive duty ? I am constrained to answer this question in the negative. It is recognized that different physical standards apply for original appointment to the Navy and for the retention in the service of a naval officer. After his kidney was removed, the plaintiff, because of this condition, was found, both in November 1945 and January 1946, unable to meet the physical standards for appointment to the Begular Navy. i
He was examined in late September 1945 for the purpose of release to inactive duty and the examining doctor, although noting the absence of his kidney, found no physical defects; found him fit for duty at sea or on foreign service and qualified for release to inactive duty. Having in the meantime requested transfer to the Regular Navy, he was again placed on active duty and thereafter physically examined pursuant *218 to this request, with the results described above. Again in August 1946, the plaintiff was examined for the purpose of release to inactive duty, found fit to perform active duty at sea or on foreign service and physically qualified for active duty. The key to the plaintiff’s entitlement to retirement is whether he was truly fit for active duty at sea or on foreign service.[3] The affirmative findings as to this fact by the doctors who were examining him for the purpose of release to inactive duty, flies in the face of the findings by two boards of doctors (see findings 5 and 6), which found that he was not physically qualified to perform his duties at sea. While it is true that the plaintiff, after his release to inactive duty, stated in writing that he was in good health, it may be assumed that however well he may have felt, this was necessarily due to the proper functioning of the remaining kidney. The doctors who had examined the plaintiff for flying found him not qualified. The doctors who examined him for the purpose of releasing him to inactive duty, perhaps in the rush of demobilization, found him qualified for active duty at sea or on foreign service. With these conflicting judgments of naval doctors, one glaring fact appears: that the standards for retention on active duty of an officer in the Navy are unclear at best. The judgments of all of the doctors were based upon the identical condition — the absence of a kidney. When the plaintiff’s case was being considered by the Naval Retiring Review Board, whose judgment was in effect adopted by the Board for the Correction of Naval Records, the Board recorder, although not testifying, made a statement based upon a talk he had had the day before with some person in the Bureau of Medicine and Surgery of the Navy, who in turn had informed him concerning a number of officers who had had a kidney removed and who had been returned to duty. Although there does not appear to be any restriction on such boards relying on hearsay evidence, this hearsay on hearsay as to a partial record of some officers’ duty status (the statement did not indicate how long any officer whose kidney had *219 been, removed continued on active duty) when considered as part of the entire record, cannot be considered of substance. While not controlling it is interesting to compare the Army standard of fitness for active duty which provided that an officer was incapacitated for active service if he were permanently physically incapable of performing full military duty (i.e. general service) field as well as garrison, in peace and war, even though he could perform limited service with the supply arms and services. See Powers v. United States, 176 Ct. Cl. 388 (1966).
On the whole record, it is found that plaintiff was not physically fit for active duty at sea or on foreign service at the time of his release to inactive duty and that the decision of the Board for the Correction of Naval Records to the contrary is not supported by substantial evidence and is arbitrary.
The plaintiff is, therefore, entitled to disability retirement pay from August 3, 1946, less amounts received by him from the Veterans Administration.
Findings op Fact
1. Plaintiff enlisted in the U.S. Naval Reserve on July 15, 1941, and served on active duty as an enlisted man from September 28, 1941 to January 7, 1942, when he accepted an appointment as an aviation cadet.
2. Plaintiff served on active duty as a Naval Reserve officer from January 8, 1942 to November 12, 1945, and from December 22, 1945 to August 22, 1946. At the time of his release from active duty, plaintiff was serving in the grade of a temporary lieutenant.
3. While serving on active duty, plaintiff was admitted to the U.S. Naval Hospital, Seattle, Washington, on August 4, 1944, by reason of a kidney infection. On August 9, 1944, his right kidney was surgically removed.
4. Plaintiff appeared before a Board of Medical Survey convened at the U.S. Naval Hospital, Seattle, Washington, on October 31, 1944. The Board was of the opinion that the absence of the right kidney rendered plaintiff physically unfit for full duty ashore or afloat, but that he was physically *220 fit for limited duty consistent with his present disability, and that such duty would not aggravate his condition. The Board recommended that plaintiff be retained in the U.S. Naval Reserve and assigned limited duty within the continental limits of the United States in a billet not requiring prolonged physical exertion, and that he be reexamined after a period of 6 months to determine his fitness for full duty.
5. On November 3, 1944, plaintiff was given a physical examination for flying, at the U.S. Naval Air Station, Seattle, Washington, and found physically qualified and temperamentally adapted for duty involving actual control of aircraft in Service Group II within the continental limits of the United States, with a recommendation that he be reexamined at the end of 6 months to determine his fitness for return to full flight status. He was discharged from the hospital, to duty, on November 17, 1944.
6. Plaintiff was examined on May 1, 1945, at the Naval Air Station, Glenview, Illinois, and found physically qualified and temperamentally adapted for duty involving actual control of aircraft in Service Group II within the continental limits of the United States. He was found, however, not physically qualified to perform all of his duties at sea. This finding was approved by the Bureau of Medicine and Surgery on June 29, 1945.
7. Plaintiff was examined for the purpose of release to inactive duty, at the Separation Center, Great Lakes, Illinois, on September 24, 1945, and found fit to perform active duty at sea or on foreign service, and also physically qualified for a release to inactive duty status in the U.S. Naval Reserve. The Report of Physical Examination recorded a history of the removal of the right kidney in 1944 but noted “none” under summary of defects.
8. On September 25, 1945, plaintiff was detached from the Separation Center to terminal leave.
9. On November 8, 1945, plaintiff requested transfer to the Regular Navy, and on November 9, 1945, requested retention on active duty pending action on his application for transfer to the Regular Navy.
10. Plaintiff was examined at the Naval Air Station, Glen-view, Illinois, on November 9, 1945, and found aeronautically *221 adapted but not physically qualified for transfer to the Regular Navy.
11. Plaintiff was released from all active duty in the U.S. Naval Reserve on November 12, 1945.
12. On November 26, 1945, plaintiff was apointed lieutenant, for temporary service in the U.S. Naval Reserve, to rank from July 1, 1944.
13. Plaintiff was physically examined on December 18, 1945, at the Naval Air Station, Norfolk, Virginia, and found physically qualified and aeronautically adapted to perform the duties to which he was then assigned,[1] and qualified for temporary promotion to lieutenant commander. Although the record is not entirely clear, it appears that he never served in the rank of lieutenant commander.
14. Plaintiff was recalled and reported for active duty on December 22, 1945, pending action on his application for transfer to the Regular Navy.
15. On January 17, 1946, a Board of Medical Examiners convened at Washington, D.C., for consideration of the physical condition of the plaintiff. The Board, having reviewed plaintiff’s medical records on file in the Bureau of Medicine and Surgery, reported that plaintiff failed to meet the physical standards of the United States Navy for appointment in the Regular Navy by reason of “Absence, acquired, right kidney.” These findings were approved by the Chief of the Bureau of Medicine, and plaintiff’s application for transfer to the Regular Navy was denied on February 12, 1946.
16. On March 4, 1946, plaintiff requested retention on active duty for 3 months.
17. On April 1, 1946, plaintiff requested retention on active duty until July 1, 1947.
18. By letter dated June 1, 1946, plaintiff was advised by the Bureau of Naval Personnel that budgetary restrictions and personnel limitations prevented approval of retention on active duty beyond the demobilization period, but that plaintiff could be approved for limited retention under provisions of ABNAV 395-45.
*222 19. On August 3, 1946, plaintiff was examined for release to inactive duty. The examination noted the absence of the right kidney. Plaintiff was found fit to perform active duty at sea or on foreign service, and found physically qualified for release to inactive duty.
20. Plaintiff was detached to terminal leave on August 3, 1946, and on August 22, 1946, was released from all active duty in the U.S. Naval Beserve.
21. Plaintiff was examined on November 17, 1946, at the Naval Air Station, Seattle, Washington, and found physically qualified and aeronautically adapted for the actual control of aircraft and active duty with a Naval Air Beserve Training Unit. The Bureau of Medicine and Surgery disapproved this recommendation on January 17, 1947, and stated that “In view of the nature of the defect reported, absence acquired, right kidney, this officer is considered not physically qualified for duty involving the actual control of aircraft.”
22. By rating action dated February 28, 1947, the Veterans Administration awarded plaintiff a 30 percent disability rating for right nephrectomy from November 13, 1945 to December 21, 1945, and from August 23, 1946.
23. By Veterans Administration rating action dated September 10, 1947, plaintiff was rated at 30 percent for “Nephrectomy Rt, Normal Lt Kidney.”
24. By Veterans Administration rating action dated December 5, 1947, plaintiff was again rated at 30 percent for “Nephrectomy Bight With Normal Left Kidney.”
25. Plaintiff underwent a quadrennial physical examination on J une 4,1953, and was found qualified for active duty at sea and on foreign shore.
26. In a Report of Medical History dated February 1, 1954, plaintiff stated to the Navy, in part, as follows,:
17. Statement of Examinee’s Present Health In Own Words. (Follow by description of past history, if complaint exists) : I am in excellent health.
27. In an Annual Certificate of Physical Fitness, dated December 1, 1954, plaintiff stated therein that “I am in good health — no complaints.”
*223 28. On. July 14, 1955, plaintiff applied to tbe Board for Correction of Naval Becords for a review of his case. Plaintiff stated therein that “I would like my release from active duty to 'be changed to Medical Betirement,” and that “While on active duty, my right kidney was removed. This should have qualified me for medical retirement.” Plaintiff's application further stated therein that he did not desire to appear before the Board, and that he did not desire to have witnesses appear in person in support of his application.
29. On February 24, 1956, the Board for Correction of Naval Becords requested that the Naval Betiring Beview Board furnish an advisory opinion regarding plaintiff’s physical condition at the time of his release from active duty.
30. Plaintiff, in an Annual Certificate of Physical Fitness, . dated September 4, 1956, stated therein that “I am in good health.”
31. By letter dated January 10, 1957, (with a copy to plaintiff’s designated counsel) plaintiff was advised by the Naval Betiring Beview Board, that a hearing in his case had been set for February 6, 1957, and that plaintiff’s counsel should be prepared to present such testimony, witnesses, and affidavits as may be desired.
32. On February 6, 1957, the Naval Betiring Beview Board conducted a hearing on plaintiff’s case. The membership of the Board consisted of one admiral of the Begular Navy and four captains of the U.S. Naval Beserve. Two of the four captains were Medical Corps officers. Plaintiff did not appear at the hearing, but was represented by counsel. Several documents were received into evidence and statements were made by both plaintiff’s counsel and the Board’s recorder. The Board closed for deliberation after plaintiff’s counsel stated that he had nothing further in the way of testimony, witnesses, or further statements to present, nor evidence of any kind to offer.
33. The Naval Retiring Review Board, by letter dated February 19, 1957, furnished its Record of Proceedings and the following advisory opinion to the Board for Correction of Naval Records:
*224 The Naval Retiring Review Board thoroughly reviewed all the available records, including those furnished by the Veterans Administration, in the case of Lieutenant Frank Norris Ward, Jr., U.S. Naval Reserve (Inactive) 124 447, and carefully considered the statements and arguments of Counsel.
After deliberating on the evidence before it, the Board is of the opinion that Lieutenant Ward was physically qualified for active naval service at the time of his release from active duty on 22 August 1946, within the contemplation of the then existing retirement laws. The Board considered that the absence, acquired, right kidney, suffered by this officer was not a condition of such nature as to disqualify him for duty on the active list.
H» íH »í»
34. By letter dated March 7, 1957, plaintiff was advised by the Board for Correction of Naval Records as follows:
^5 H* »}»
Reference is made to your application for correction of your naval record, under the provisions of Section 207 of the Legislative Reorganization Act of 1946, as amended (65 Stat. 655).
Administrative regulations and procedures established by the Secretary of the Navy for the guidance of this Board provide that the burden of proof is on a Petitioner to show by documentary evidence that an error has been made, or an injustice has been suffered. Further, a hearing by the Board may be denied when a Petitioner has failed to show that an entry or omission in his naval record was improper or unjust under then existing standards of naval law, administration, and practice.
As you know, the records in your case were referred to the NRRB for an advisory opinion on the medical issue involved. The NRRB advised the Board as follows:
The Naval Retiring Review Board thoroughly reviewed all the available records, including those furnished by the Veterans Administration, in the case of Lieutenant Frank Norris Ward, Jr., U.S. Naval Reserve (Inactive), 124 447, and carefully considered the statements and arguments of Counsel.
After deliberating on the evidence before it, the Board is of the opinion that Lieutenant Ward was physically qualified for active naval service at the time of his release from active duty on 22 August *225 1946, within the contemplation of the then existing retirement laws. The Board considered that the absence, acquired, right kidney, suffered by this officer was not a condition of such nature as to disqualify him for duty on the active list.
Preliminary examination of your naval record and review of the material submitted by you fails to establish a sufficient basis for further action by this Board.
In the absence of additional material evidence, no further action on your application is contemplated.
^ ^ ^ ‡ ^
35. On August 8, 1957, plaintiff underwent a Naval Be-serve quadrennial physical examination at the U.S. Naval Station, Seattle, Washington, and was found “qualified to perform active duty at sea & foreign service.” The Report of Medical History discloses that plaintiff stated in writing that he was in “Good health.”
36. Plaintiff, in an Annual Certificate of Physical Fitness dated November 13, 1957, stated that “I am in fair health. No change.”
37. Plaintiff, in Annual Certificates of Physical Fitness, dated May 31, 1958 and October 5, 1959, stated that his present health was “Excellent.”
38. Plaintiff, in an Annual Certificate of Physical Fitness dated October 5, 1960, stated that “I am in good health.”
39. Plaintiff’s fitness report covering the period December 22, 1945 to February 28, 1946, discloses that plaintiff’s total flight time was 300.5 hours. At the time, plaintiff was stationed at the Naval Auxiliary Air Station, Sauffley Field, Pensacola, Florida. The fitness report further discloses that plaintiff’s commanding officer reported plaintiff “qualified to perform all his present duties,” and in addition thereto, stated as follows:
Lieutenant WABD has performed his regular and routine duties in an excellent manner. He has an agreeable personality. He is conscientious and industrious in his work. He is of the highest moral and military character. He is highly recommended for promotion when due. He has seen this report.
40. Plaintiff’s fitness report covering the period March 1, 1946 to August 3, 1946 shows that plaintiff had an additional 145 hours’ flight time in this period of less than six months. *226 Plaintiff’s commanding officer at Sauffley Field noted therein, in part, as follows:
Lt. WARD is physically and mentally qualified to carry out any duty to which he may be assigned. * * * Lt. WARD has performed his regular and routine duties in an outstanding manner. He is aggressive and conscientious in his work, and he has an agreeable personality. He is of the highest moral and military character. He is highly recommended for promotion when due. He has seen this report. RELEASED TO INACTIVE DUTY.
Conclusion or Law
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover disability retirement pay from the date of his final release from active duty, less amounts received from the Veterans Administration, and judgment is entered to that effect.
The amount of recovery will be determined pursuant to rule 47(c).
In accordance with the opinion of the court, a memorandum report of the commissioner and a computation accepted by the parties, it was ordered on April 28, 1967, that judgment for the plaintiff be entered for $36,657.79.

 The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and rule 57(a).

 Service Group II: Pilots of 40 to 50 years of age, or younger pilots -who, for other reasons are not qualified for unrestricted flying in Service Group I, but who are so qualified for unrestricted flying in Service Group II, shall not be assigned to fighter, bomber or torpedo squadrons.

 See also Powers v. United States, 176 Ct. Cl. 388 (1966).

 The Navy standard at that time required ability reasonably to perform the duties of the rank and position at sea as well as ashore. See Harris v. United States, 177 Ct. Cl. 538 (November 10, 1966) ; Boland v. United States, 169 Ct. Cl. 145, 149-150 (1965).

 He was then on inactive duty.