Laramore, Senior Judge,
delivered the opinion of the court:
This is a military pay case in which plaintiff, a former Captain with a Reserve commission in the U.S. Air Force and approximately 12 years of military service at the time of his discharge on June 30,1968, sues for a judgment voiding the honorable military discharge after being passed over twice for promotion to the grade of Major; for all pay and allowances due him as a Captain in the U.S. Air Force from date of discharge to date of judgment; for military hazardous duty and flight pay from the date plaintiff was removed from flight duty, October 2, 1964 to date of judgment; and for promotion to the grade of Major effective retroactively to October 6,1967, the date of the second selection panel.
This case turns primarily on its facts, which will be set forth here only to the extent necessary for this decision.
Plaintiff’s Officer Effectiveness Reports (OER) generally showed him to be an above-average navigator, but a person with behavioral problems. On June 14, 1964, plaintiff failed to report for duty at his aircraft due to drunkenness and subsequently accepted disciplinary action in the form of Article 15, non-judicial punishment.[1] In July of 1964 plaintiff underwent a routine medical examination in which he was found unqualified for flight duty due to an ulcer which existed since *758 at least 1961. The Surgeon General granted him a waiver. During the course of this examination plaintiff sought psychiatric help. The psychiatrist found plaintiff was suffering from “situational maladjustment, chronic, moderate, acute, severe, manifested by marital discord, impulsive aggressive behavior, symptomatic over-indulgence in alcohol and by impaired judgment and insight.” The medical conclusion was one of minimal impairment with administrative separation recommended only if it became apparent that plaintiff was dealing inadequately with his problems. Base flight surgeons analyzed the report and recommended plaintiff be continued in flight status but be kept under assiduous observation.
The Wing- Commander, contemplating an Air Force Begu-lation (AFR 36-2 “Administrative Discharge Procedures”) ,[2] called for a complete review of plaintiff’s record. During this meeting information developed on two unfavorable incidents which occurred prior to that of June 1964. Eesults of this meeting culminated in plaintiff’s being grounded for medical reasons, suspension from flight duty and postponement of the discharge proceeding. The Colonel responsible for this decision personally notified plaintiff of the actions and the reasons for it. Plaintiff responded with a letter of complaint to his U.S. Senator alleging racial discrimination. The Senator’s inquiry initiated an investigation, conducted by Air Force personnel, that revealed no racially biased motives on the part of plaintiff’s immediate colleagues and superiors.
After removal from flight duty plaintiff was assigned for approximately five months (January 1,1965 — May 31,1965) as Crew Training Flight Administrative Officer and approximately 11 months (June 1, 1965 — May 5, 1966) as Chief of the'Personnel Services Section at Stewart Air Force Base, Tennessee. In both positions plaintiff received very favorable OEE ratings.
*759 On June 29, 1966 plaintiff was reported drunk and disorderly in the Officers’ Club and operated a motor vehicle while intoxicated. Plaintiff again elected Article 15, nonjudicial punishment, in lieu of a court-martial.
On August 18, 1966 proceedings were instituted, under AFB, 36-2, based on plaintiff’s continued unsatisfactory performance.
On October 17,1966 the Air Force Selection Board passed over plaintiff for promotion to the grade of Major while selecting approximately two-thirds of the eligible officers. The record does not indicate that improper material concerning plaintiff was before the Selection Board.
On March 28,1967, the AFB 36-2 proceedings culminated in a recommendation that plaintiff should be honorably discharged. On August 25, 1967 the Judge Advocate General, on review of the AFB 36-2 proceedings, concluded that the record was insufficient to support all the charges and advised against an administrative discharge, which the Air Force accepted.
The OEB (for the one-year period ending May 1, 1967) showed plaintiff did an above-average job as Chief of the Personnel Services Branch at Stewart Air Force- Base but continued to have drinking problems that impaired his minimum standards of conduct as an officer. Plaintiff answered the negative OEB statements without providing evidentiary support for his comments.
On November 2,1967 plaintiff was again offered a choice between court-martial and Article 15 punishment [3] for drunk and disorderly conduct that occurred at the Officers’ Club on September 29,1967. Plaintiff chose the Article 15 punishment and alleged that conduct such as his was not uncommon at the Officers’ Club. Inquiry proved this statement to be without merit. On October 6,1967 plaintiff was considered a second time by the Selection' Board for promotion to temporary grade of Major. He was again passed over and consequently received an honorable discharge on June 30, 1968.
In May 1968 plaintiff appealed his case to the Air Force *760 Board for Correction of Military Records (hereinafter referred to as BCMR) setting forth allegations similar to those addressed to this court. After consideration of plaintiff’s record, including solicitation of “advisory” statements from persons involved with plaintiff during his Air Force career, the BCMR notified plaintiff that it had carefully considered his record with the presented facts and did not find probable error or injustice. The BCMR left itself open to consider additional information that has not been supplied. In the absence of the presentation of any such information, the BCMR would not take further action and afford plaintiff a hearing.
Plaintiff contends his entire career was thwarted due to racial prejudice. Derogatory information, motivated by racial bigotry, in the form of the first AFR 36-2 discharge proceeding, was placed before the first Selection Board. Allegedly, the Board’s knowledge of this proposed discharge action prevented plaintiff from being promoted before his first Selection Board. This “stigma” of being “passed over” the first time, and having one’s file so marked, is sufficient to preclude selection by the second Selection Board.
The plaintiff further alleges that the BCMR erred in failing to recognize this injustice and compounded the mistake by soliciting advisory opinions, adverse to plaintiff, which plaintiff has not been permitted to refute at a hearing. It is alleged that the failure to provide confrontation on the adverse advisory opinions constitutes a violation of administrative due process. Except for the file notation “passed over” and the allegation that this label thwarts future promotion, plaintiff does not dispute the procedures before the second Selection Board. Plaintiff’s ultimate contention, and the primary issue in this case, is that the BCMR acted arbitrarily and capriciously in failing to grant him a hearing on the alleged errors and correct his record to accord with the relief sought in this court.
The basis for this law suit is the act establishing boards for the correction of military records,[4] and it provides in pertinent part, as follows:
*761 •§ 1552. Correction of military records: claims incident thereto
(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may .correct any military record of that department when he considers it necessary to correct an error or remove an injustice.
The fact that this court has the jurisdiction to review actions of military correction boards is not disputable. Hertzog v. United States, 167 Ct. Cl. 377, 383-384 (1964), and cases cited therein.
The scope of review in this case has been established by repeated pronouncements of this court requiring a showing of clear and convincing evidence of arbitrary or capricious action before the court will interfere with the findings by the Secretary of the military service or by a correction board that a person was erroneously or unjustly discharged from the service. Unterberg v. United States, 188 Ct. Cl. 994, 412 F. 2d 1341 (1969) ; Ward v. United States, 178 Ct. Cl. 210 (1967) ; Furlong v. United States, 153 Ct. Cl. 557 (1961).
In the absence of the required showing of arbitrary and capricious action by the BOMR, its determinations are final and binding. Hoffman v. United States, 175 Ct. Cl. 457 (1966).
We find that in this case plaintiff has failed to meet his burden of producing “cogent and clearly convincing evidence to warrant the substitution by this court of its judgment” for that of the military reviewing authorities, and. to prove that the authorities’ decision was arbitrary, capricious or erroneous in law. Wood v. United States, 176 Ct. Cl. 737, 743 (1966) ; Stephens v. United States, 174 Ct. Cl. 365, 374, 358 F. 2d 951 (1966) ; Wales v. United States, 132 Ct. Cl. 765, 130 F.Supp. 900 (1955).
Plaintiff makes numerous allegations of racial discrimination. However, exclusive of several minor social incidents at the Officers’ Club, about which there is also more opinion than fact, there is no evidence of racial bias. This is particularly true on the part of those responsible for evaluating *762 plaintiff, via., bis immediate colleagues and superiors. A finding of racial prejudice in this case would have to be irrationally imputed, based entirely on allegations, to a conspiracy against plaintiff at every level of the Air Force. The failure to prove these allegations makes such a finding impossible.
The allegation that plaintiff was conspiratorially denied promotion by his superior officers’ wrongful placement of a reference to an AFE 36-2 proceeding before the first promotion Selection Board is also without foundation.
The records an Air Force Selection Board may consider are set out in AFE 36-89, paragraph 23, subparagraph d, as follows:
d. Records Considered. To insure all eligible officers equitable consideration, selection boards at HQ, TJSAF use the Officer’s Selection Folder (AFHQ Form 0-2078) and command selection boards use the Officer’s Command Personnel Eecords Folder (AF Form 527) as the principal instrument for evaluating an officer’s qualification for promotion. If there is also reasonably substantiated information not in these records which raises serious doubt as to cm officer's suitability for promotion, it may be presented to the command selection board at the discretion of the major air commamder concerned, or to ■the central selection board at the discretion of the Director of Military Personnel, HQ USAF. Selection boards are not authorized to consider letters of recommendation, or similar documents not authorized for inclusion in the selection folder. [Emphasis added.]
The Secretary of the Air Force is bound by these regulations. Hamlin v. United States, 183 Ct. Cl. 137, 141, 391 F. 2d 941 (1968), and cases cited therein. This regulation can reasonably be interpreted as allowing negative information of a serious nature that could impair a candidate’s functioning as an officer, such as the circumstances precipitating an AFE 36-2 proceeding, to be before the Selection Board, and there is no Air Force regulation stating or implying the contrary. Presumption favors the validity of official military acts and, in the absence of contrary evidence, it is presumed the BCME and the military personnel whom it is the Board’s *763 sidering all pertinent records relating to the plaintiff. Biddle function to correct, performed their functions properly, con-v. United States, 186 Ct. Cl. 87, 104 (1968) ; Holman v. United States, 181 Ct. Cl. 1, 383 F. 2d 411 (1967).
A mere reference to the discharge proceeding was before the Selection Board, not the actual proceeding. There is no indication whether the Selection Board even 'considered it. Most important is the fact that no Air Force regulation was violated. Therefore, the BCMR was not arbitrary or capricious in failing to find error where reference to a promotion candidate’s discharge proceeding was placed before the Selection Board.
The evidence in this case strengthens and supports the presumption favoring the Air Force actions regarding plaintiff. The medical records show the flight surgeons and the psychiatrist gave plaintiff the benefit of the doubt regarding flight duty. He had been receiving this preference for at least four years regarding his ulcer. Plaintiff had drinking problems that on at least one occasion prevented him from appearing for flight duty. Plaintiff also admitted serious recurring incidents of misconduct, primarily caused by drinking, and accepted several Article 15’s, non-judicial punishment,[5] in lieu of fighting the charges in a court-martial action. Drinking problems also affected plaintiff’s social conduct as an officer and the record contains evidence of poor social adjustment. The foregoing statements do not negate the fact that plaintiff generally was a good or slightly above average officer, who on occasion demonstrated fine capabilities. The point is that in light of such ambivalent evidence regarding plaintiff, and the long-standing principle that it is for the military to decide who is, and who is not, fit for service, there is no clear and cogent proof that the BCMR erred.[6]
*764 The contention that an initial passover for promotion makes the second consideration an empty gesture is unacceptable because people do, in fact, receive promotions on their second consideration.
The BCMR was also not arbitrary or capricious in seeking advisory opinions regarding plaintiff. In accordance with BCMR investigatory functions, it is a long established practice to seek advisory opinions in evaluating an applicant’s record of fitness for service, Hutter v. United States, 170 Ct. Cl. 517, 525, 345 F. 2d 828 (1965),[7] and a hearing is not required on these matters since the BCMR’s function does not involve conducting adversary proceedings. In addition, the statute [8] empowering the BCMR, and the applicable regulations, do not require applicants be given a hearing, leaving the matter to the BCMR’s discretion. This court will not hold the denial of a hearing improper where plaintiff failed to show, based on the documentation supporting the application, that the BCMR acted arbitrarily in denying the hearing. Kurfess v. United States, 169 Ct. Cl. 486 (1965).
For the foregoing reasons plaintiff is not entitled to recover. Accordingly, plaintiff’s motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and plaintiff’s petition is dismissed.

 10 U.S.C. § 815, Art. 15, Commanding officer's non-judicial punishment. Under this provision plaintiff had the alternative of choosing a court-martial, declaring his Innocence and fighting the charge.

 AFR 36-2 establishes criteria for identifying active-duty Air Force officers who, due to evidence of unfitness or unacceptable conduct, should be required to show cause for retention in the Air Force. The following sub-items of paragraph 4(a) of the regulation enumerate the conduct relevant to this case: (4) excessive use of alcoholic beverages and (6) an officer’s recurrent misconduct that raises serious doubts concerning his fitness for retention in the Air Force regardless of whether such misconduct has or has not resulted in judicial or non-judicial punishment.

 Note 1, supra.

 Section 207 of the Act of August 2, 1946, 60 Stat. 812, 837, as amended, 65 Stat. 655, codified by the Act of August 10, 1956, 70A Stat. 116 as 10 U.S.C. § 1552.

 Note 1, supra.

 The conclusions readied here apply equally to removal from flight duty, loss of hazardous duty pay, and to the denial of promotion.
In the recent case of Brenner v. United States, 202 Ct. Cl. 678, 693-694 (1973), cert. denied, 419 U.S. 831 (1974), this court declared reasons, appli *764 cable to tlie present case, for not involving itself in the fitness for service issue, as follows:
“The promotion of an officer in the military service is a highly specialized function involving military requirements of the service and the qualifications of the officer in comparison with his contemporaries, plus expertise and judgment possessed only by the military. No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure, which includes, but is not limited to, an analysis of the fitness reports and personnel files and qualifications of all of the officers considered * * *. The Supreme Court expressed these principles very well in the case of Orloff v. Willoughby [345 U.S. 83 (1953)]."

 Hutter held a correction board may be arbitrary when it follows an inaccurate ex parte opinion, an issue not present in this case, but that does not bar the board’s seeking such opinions. Merson v. United States, 173 Ct. Cl. 92, 98 (1965), and eases cited therein.
The correction board’s quest for consultation and advice, unknown to plaintiff, was to his advantage as part of the board's search for trying to find a sufficient basis upon which a review hearing could be granted.

 Note 4, supra.