Charles E. CRAFT

v.

The UNITED STATES.

No. 96–74.

United States Court of Claims.

June 16, 1976.

David Rein, Washington, D. C., attorney of record for plaintiff.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, and DAVIS and KUNZIG, Judges.

KUNZIG, Judge.

In this military pay case of first impression, plaintiff, a former U.S. Army Special Forces Sergeant First Class (SFC, E–7), seeks reinstatement, back pay and records correction. SFC Craft contests the action of the Army in placing him on the Temporary Disability Retired List (the Temporary List) in 1969 and also the Army's subsequent decision permanently to retire him for disability in 1973. We are unanimously of the opinion that plaintiff's 1973 permanent separation cannot stand and we hold for plaintiff.

On January 18, 1952, plaintiff enlisted in the Army. After basic training at Fort Ord, plaintiff volunteered for airborne training and on completion of jump school, the Army as assigned him to Fort Bragg. In 1959, SFC Craft served a tour of duty in Germany and by 1961 had returned to Fort Bragg. During this second Fort Bragg assignment, plaintiff volunteered for the Special Forces. While with this unit, SFC Craft participated in the Vietnam conflict in 1967 where, in the words of his commanding officer, he performed missions of an "extremely hazardous nature." The history of plaintiff's military career, particularly in Vietnam, clearly illustrates that he was, in all respects, an excellent soldier.

In January 1968, plaintiff returned to Fort Bragg from Vietnam and his problems with the Army began. Strangely, it was not plaintiff's duty performance, but marital difficulties which led to his current predicament. Plaintiff's wife complained to his commanding officer and base medical personnel about Craft's attitude concerning her fidelity. On January 17, 1969, Fort Bragg authorities admitted plaintiff to Womack Army Hospital, ostensibly for a three-day observation. The examining psychiatrist, a Captain Rabon, concluded that plaintiff suffered from a "[s]chizophrenic reaction, paranoid type, chronic, [and] severe * * *." Rabon recommended that

a Medical Board find Craft unfit for retention in the Army despite the fact that the only impaired relationship demonstrated by Craft involved his wife. Whatever the nature of plaintiff's condition, there is no evidence in the record that it interfered with his military duties.

As a result of Rabon's recommendation, Womack personnel did not release plaintiff at the end of the three-day period, but confined him to a locked mental ward until the latter part of March. At this time, Craft was transferred to an open ward until his April 15, 1969, release from the hospital.

In the meantime, a Medical Board convened at Fort Bragg to evaluate plaintiff's case. Based solely on CPT Rabon's recommendation, the Medical Board on February 26, 1969, found plaintiff unfit for retention. Plaintiff did not appear before this Board.

The diagnosis was reviewed by a Physical Evaluation Board at Fort Gordon. The Evaluation Board found plaintiff unfit and recommended that he be placed on the Temporary List with a 70 percent disability rating. Like the Medical Board, the Evaluation Board formulated its conclusions without interviewing plaintiff and based its findings on the report of CPT Rabon.

On April 28, 1969, the Army denied plaintiff's request for a disability waiver to remain on active duty. A Physical Review Council reconsidered his medical status and concurred with the recommendations of the Evaluation Board again without seeing plaintiff. The Council rendered its decision on May 1, 1969. On May 28, 1969, the Adjutant General placed plaintiff on the Temporary List.

By mid-1969, plaintiff found himself in temporary retirement based on his wife's complaints and the January 1969 examination by CPT Rabon. Plaintiff in his desire for "vindication," proceeded to seek private legal and medical advice.

In 1972, plaintiff submitted to additional examinations and administrative proceedings calculated to gauge his fitness for duty after three years on the Temporary List. The statutes which establish the Temporary List define this procedure. The nature of this status is a type of "limbo." A serviceman who is on the List is separated from the Army, but his final status is deferred pending additional medical evidence. 10 U.S.C. § 1202 (1970). When a party is placed on the List, he is to receive periodic examinations and the Secretary of the service branch must, within five years, make a final disposition of the case. 10 U.S.C. § 1210 (1970). The final determination takes two forms. The serviceman is either found unfit to return to duty in which case he is permanently retired, or he is found fit and must be returned to active service (with his consent). 10 U.S.C. §§ 1210–11 (1970). *See* Part 3, *infra*. Therefore, in compliance with these statutes, the Army conducted a reevaluation of plaintiff's situation in 1972 and 1973.

During the first step of the reevaluation, SFC Craft was examined by LTC Stoller, Chief Psychiatrist at Madigan Hospital, Tacoma, Washington. On September 20, 1972, Colonel Stoller concluded that plaintiff was *fit for return to duty*. However, Stoller noted that plaintiff's bitterness toward the Army precluded consideration of any reinstatement. Stoller recommended a permanent discharge.

A reevaluation Medical Board convened to assess Stoller's diagnosis. This Board, *without making a determination of plaintiff's fitness*, concurred in LTC Stoller's separation recommendation. Plaintiff did not appear before the reevaluation Medical Board.

This led to proceedings before a Physical Evaluation Board (the reevaluation PEB). This Board at first considered SFC Craft's case solely on the record. *Again, without making a fitness determination*, the reevaluation PEB recommended separation. However, it reconsidered and granted plaintiff a hearing. After listening to plaintiff's testimony and having an opportunity to observe his demeanor, the reevaluation PEB on February 13, 1973, found plaintiff *"fit to perform the duties of [his] * * * rank."*

Having come this close to his goal of return to active duty, plaintiff had two

more hurdles to surmount. The first of these was a Physical Review Council (the Council). On February 21, 1973 only a week after the reevaluation PEB report, the Council overturned the reevaluation PEB without a hearing and based on the same record that the PEB had used when concluding that Craft was fit for duty. Moreover, the sum total of changes effected by the Council under the heading "modifications and reasons" was as follows:

The following modification(s) and reasons therefore have been made in your case:

Items:

8a(1): Enter: "9203."

8b(1): Enter: "schizophrenic reaction, paranoid type, chronic, slight."

8c(1): Enter: "No."

8d(1) and 8e(1): Enter: "Yes."

8g(1): Enter: "10."

Delete check under "Fit." Check: "Unfit." Enter: "10" and "Separated with severance pay."

10: Check: "Is not."

A physical Disability Appeal Board reviewed the case on April 10, 1973. Again, without a hearing and on the same record, the Board affirmed the Council. The reasons given were limited to the following statement:

[T]he board finds that the findings and recommendations of the Physical Evaluation Board as modified by the *Army Physical Review Council* are supported by the evidence of record, are correct in fact and are in accordance with Department of the Army policies pertaining to physical fitness and/or physical separation or retirement.

On May 31, 1973, plaintiff was permanently separated from the Army for disability.

Whatever the medical evidence reveals, one fact in the instant case becomes astonishingly clear upon careful examination of the record. Plaintiff was permanently retired from the Army for mental disability without any evidence of impairment of his duty performance. It is against this background that plaintiff brings the instant action seeking reinstatement, back pay and records correction.

Plaintiff now enters a motion for summary judgment. First, he argues that the initial findings of disability leading to placement on the Temporary List were arbitrary, capricious and in violation of Army Regulation 40–501, ¶ 3–29 (defining the standards for a finding of psychotic disability). Second, plaintiff contends that the reevaluation proceedings were invalid. Specifically, he attacks the Council's determination overturning the PEB. Craft says that the Council's reversal was arbitrary, capricious, not supported by evidence, invalid for failure to state reasons and in contravention of Army Regulation 635–40, ¶ 5–5, which narrowly defines the situations in which the Council may reverse a Physical Evaluation Board. Third, plaintiff claims that the Army's conduct violated 10 U.S.C. § 1169 (1970) (circumscribing the occasions when a military serviceman may be discharged before the termination of his service contract).

Defendant counters with a cross-motion for summary judgment. It asserts that the initial unfitness determination was not arbitrary or capricious and conformed with the applicable regulations. Second, defendant contends there was no reversible error in the reevaluation proceedings. Third, it argues that the Court of Claims has no power to restore plaintiff to active duty or make a fitness determination and plaintiff cannot recover. Finally, the Government relies on the affirmative defense that plaintiff cannot recover to the extent that he seeks pay and allowances for the period after expiration of his enlistment contract. The crux of defendant's arguments is that we must leave plaintiff as we find him.

Based on the record, we conclude that the reversal by the Council[1] cannot be permit-

---

1. The later summary affirmance of the Council by the Appeals Board also failed to state adequate reasons for the reversal of the PEB. The Council is the "central key component of the decisional process." *Cooper v. United States,* 178 Ct.Cl. 277, 316 (1967). Since the Appeals

ted to stand. We, therefore, hold that plaintiff is entitled to recover.[2]

### 1. The Council

#### a. Standard for Review

■ We begin our analysis of plaintiff's discharge by considering the proper standards for review of administrative actions. As a general rule in the disability retirement area, the court is limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes and regulations. *See, e. g., Newman v. United States,* 185 Ct.Cl. 269, 276 (1968); *Beckham v. United States,* 392 F.2d 619, 622, 183 Ct.Cl. 628, 635–36 (1968); *Smith v. United States,* 168 Ct.Cl. 545, 553 (1964). As expressed by the court in *Harris v. United States,* 177 Ct.Cl. 538 (1966):

* * * [T]he traditional role of the court on review 'is to determine not whether the claimant was unfit for service at the time of his release, but rather whether the finding of the Secretary * * * that the serviceman was fit was so arbitrary, capricious or unsupported by evidence as to be contrary to the applicable principles of law.' *Johnston v. United States,* 157 Ct.Cl. 474 (1962). [*Id.* at 541].

In the case at bar, we must review the determination made by the Council by use of these standards. Since this decision cannot be upheld, we must then assess the findings of the reevaluation PEB in order to determine what the Army should have done with SFC Craft's case.

#### b. Reasons Given by Council for Reversal

■ During the reevaluation process, the Council overturned the determination made by the PEB. The PEB had decided in favor of plaintiff. The Council's modification provides few, if any, reasons for its action.[3] Plaintiff contends that the failure to provide sufficient reasons affords adequate grounds to negate the actions of the Council. We agree.

■ First, the regulations required the Council to give a summary of reasons for its action. Army Regulation 635–40, ¶ 5–5, permits the Council to modify or reverse the findings of a Physical Evaluation Board in certain limited situations. *See* Part l.c., *infra.* However, the same regulation mandates that in order to take such action, the Council must furnish a *summary of the reasons* for the modification.[4]

If the APRC [Army Physical Review Council] revises the recommendations of a PEB [Physical Evaluation Board] * * * *the following actions will be accomplished:*

routine military life. It is not felt that a possible return to this stress is an appropriate disposition of your case, and that you are, in fact, "unfit" for continued military service."

A conclusion of this type, having nothing to do with plaintiff's current physical condition as found by the PEB, can hardly rise to the dignity of "reasons" contemplated by the regulations and case law.

4. That the requirement for reasons is absolutely mandatory is further evidenced by the regulations:

"When APRC [Council] revised recommendations differ from those of the PEB and provide for a change in disposition of the member being evaluated * * * procedures described in paragraph 5–5 [including a summary of reasons] *will be followed.*" [Army Regulation 635–40, ¶ 5–4(5)(b) (emphasis added)].

---

Board failed to remedy the Council's defects, its decision must rise or fall with that of the Council. Therefore, our discussion of the Council's determination will hereinafter be deemed to include that of the Appeals Board, although not specifically referring to the Board by name.

2. Since we render judgment for plaintiff based on an invalid decision of the reevaluation Council, we find it unnecessary to address plaintiff's attacks on the initial unfitness determination (plaintiff's point 1) and his argument that 10 U.S.C. § 1169 (1970) prevents his separation (plaintiff's point 3).

3. In addition to some nondescript words "filling in the blanks," the Council added a few other phrases in the midst of a percentage disability paragraph.

"A careful review of the original medical board reveals that the external precipitating stress of your schizophrenic condition was

(1) A copy of the revised recommendations will be furnished the member. * * The revised recommendations *will include a summary of the reasons thereof.* * * [Army Regulation 635–40, ¶ 5–5c(1) (emphasis added)].

Moreover, we have in the past held that in order to afford the requisite finality to administrative decisions in the military retirement area, boards must discuss, in writing, the reasons for their action. The court noted in *Beckham, supra:*

A *naked conclusion* and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing * * * *is inimical to a rational system of administrative determination and ultimately inadequate.* * * * 'In these circumstances [summary and sketchy findings and reasoning by the administrative Board] we cannot give as much deference to the Board's determination as if it had given detailed findings to support, and fuller explanations of the reason for, its conclusion. * * * [*Id.,* 392 F.2d at 622–23, 183 Ct.Cl. at 636 (emphasis added, citations omitted)].

In a particularly egregious situation, the court may be compelled to conduct its own inquiry in order to find record support for the administration decision. As stated in *Smith, supra:*

Where the medical issue is complex and in considerable dispute, and the Veterans Administration has previously found [in favor of plaintiff] * * * a disposition of the claim * * * by the * * * Board without a hearing and *without an analysis of the evidence in writing is inadequate assurance that due weight was given to all of the evidence.* * * * [*Id.,* 168 Ct.Cl. at 553 (emphasis added)].

■ In short, the Council, based on the requirements of case law and regulations, had a duty to present a summary of reasons for reversing the favorable (to plaintiff) decision of the reevaluation PEB. Absent such reasons, we cannot sustain their conclusions.

In *Versaci v. United States,* 403 F.2d 246, 185 Ct.Cl. 672 (1968), the court was con-fronted with a similar situation. In that case, an Army Physical Review Council suddenly, and without explaining its reasons, reversed a decision by a Physical Evaluation Board. The reasons for the reversal could not be supplied from the record. The court declined to sustain the Council's determination.

Such a determination, "conclusionary in nature," making it impossible to "determine what weight was given to the evidence," and which does not "discuss the details or specify precisely what items of evidence were considered," cannot be sustained. [*Id.,* 403 F.2d at 256, 185 Ct.Cl. at 691].

■ We note at this juncture that there is nothing burdensome about the requirement that the Council give reasons for its actions. The reasons need not be expressed in great detail. *Harris, supra,* 177 Ct.Cl. at 545–46. All that is required is sufficient notification to the serviceman to permit him, if he may, to rebut the board's action. *Imhoff v. United States,* 177 Ct.Cl. 1, 8 (1966), *cert. denied,* 389 U.S. 844, 88 S.Ct. 89, 19 L.Ed.2d 109 (1967).

On the other hand, it is important to realize the dangers that failure to provide appropriate reasons can produce. Faced with an administrative decision adverse to him, a soldier needs to be sufficiently informed of the basic grounds of that adverse decision in order adequately to appeal.

Applying the necessity for giving reasons to the case at bar, it becomes patently clear that the Council failed to meet the requirement. The Council's letter to plaintiff merely stated the alterations to the reevaluation PEB's findings and told plaintiff what appeal rights were available. It did not *discuss* the reasons for the modifications. Plaintiff was left in the dark as to the basis for the unfavorable decision. In such circumstances, we cannot sustain the conclusions of the Council.

#### c. When the Council May Reverse

■ The failure to give reasons in the instant case becomes even more reprehensi-

ble in light of the regulations which carefully limit the situations when a Council may modify or reverse the findings of a Physical Evaluation Board. Since the Council failed to provide its reasons for reversing the PEB, there is no way the court can determine whether the basis for reversal comported with these regulations.

> The APRC [Council] may modify the findings and recommendations [of an Evaluation Board] when—
>
> (1) There is *manifest error* on the face of the record, or
>
> (2) The *evidence* in the record is so clear and compelling as to *require revision,* or
>
> (3) Accepted *medical principles* preclude a reasonable possibility of the correctness of the PEB findings and recommendations. [Army Regulation 635–40, ¶ 5–5a (emphasis added)].

In the instant case, the Council's failure to delineate reasons compels the court to search the record to support the reversal based on one of the three reasons outlined in the regulations. *Beckham, supra; Smith, supra.* A careful search of the record fails to show that any of the three reasons subject to the review of this court is involved in the case at bar.

The reevaluation PEB had before it substantial evidence of plaintiff's fitness for duty. *See* Part 2, *infra.* Moreover, *plaintiff appeared before this Board,* affording it the opportunity to observe his demeanor and mental state. A vital member of the reevaluation PEB was a doctor and a member of the Medical Corps. The only contrary evidence before the PEB was LTC Stoller's observation that plaintiff was bitter toward the Army, and the record of plaintiff's initial diagnosis almost four years earlier. And even LTC Stoller had found plaintiff fit for active duty.

Given such circumstances, we cannot say that the decision of the reevaluation PEB measured against the standards of Army Regulation 635–40, ¶ 5–5a was: (1) based on manifest error; (2) contrary to evidence of record; or (3) precluded by accepted medical principles. The court may not make its own *de novo* fitness determination. *Orloff v. Willoughby,* 345 U.S. 83, 91, 73 S.Ct. 534, 97 L.Ed. 842 (1953). If the only decision in the record were that of the Council, we might be forced to remand the case for further evidence and adequate reasons. However, the record before the court contains the decision of the reevaluation PEB. We apply our traditional standards of review to the PEB's determination in order to test plaintiff's fitness for duty.

### 2. The Reevaluation PEB

The reevaluation PEB found plaintiff fit to perform the duties of his rank. There is substantial evidence in the record to support such a determination.

The reevaluation PEB had before it the military's clinical report by Chief Psychiatrist LTC Stoller to the effect that plaintiff was fit for duty. It had private letters and recommendations from plaintiff's Army associates supporting a fitness determination. There were also letters from a private psychiatrist indicating that plaintiff was fit. The PEB had before it, evidence that plaintiff had adapted well to civilian life by maintaining an excellent employment record after his placement on the Temporary List. Such evidence is relevant in the reevaluation process. *Merson v. United States,* 401 F.2d 184, 190, 185 Ct.Cl. 48, 59 (1968); *Hoppock v. United States,* 176 Ct.Cl. 1147, 1165–66 (1966); *Farrar v. United States,* 358 F.2d 965, 173 Ct.Cl. 1008 (1965). Finally, but perhaps most important, is the fact that the PEB, including its medical member, had an opportunity for a firsthand analysis of plaintiff's fitness because plaintiff appeared before the Board.

Balanced against the evidence before the PEB in plaintiff's favor is the statement of LTC Stoller that SFC Craft should not be considered for reinstatement because he was bitter toward the Army, coupled with the record of the 1969 diagnosis leading to plaintiff's placement on the Temporary List. Not only does the favorable evidence appear to be overwhelming contrasted with these two negative items, there is every indication that the negative

items could not even be considered by the PEB. A report of an examining physician may include a prognosis, but may not contain gratuitous conclusions of law or references to final disposition of servicemen on the Temporary List. *Cf. Storey v. United States,* Ct.Cl., 531 F.2d 985 (1976). As such, LTC Stoller's "bitterness" remark seems irrelevant to plaintiff's fitness determination. Moreover, if bitterness toward a Service is a sufficient basis for separation, the military might be inundated with retirement requests.

█ In addition, the record of the 1969 unfitness determination leading to plaintiff's placement on the Temporary List, is also of dubious relevance in the reevaluation process. At oral argument, defense counsel claimed that under Army Regulation 40–501, once a soldier is found to be psychotic, such condition is deemed to be permanent. Such argument cannot be upheld. First, a belief that once a person has mental problems he will always have such problems contains little basis in reality. Although psychiatry is not an exact science, there are numerous examples of recovery from mental illness. Second, the regulation does not encase a serviceman's mental disability in stone. It merely provides:

> [Disability separation is provided for:] Recurrent psychotic episodes, existing symptoms or residuals thereof, or a recent history of psychotic reaction sufficient to interfere with performance of duty or with social adjustment. [Army Regulation 40–501, ¶ 3–29].

Third, defendant's interpretation of the effect of mental illness would seem to be at odds with the philosophy of the Army. The Army placed plaintiff on the Temporary List rather than permanently retiring him, apparently in the belief that he could recover from whatever problems he had. Finally, defendant's argument is legally incorrect. The prior record of unfitness is of little, if any, relevancy, in the reevaluation process. "[I]t is only the condition which exists at the time of removal from the [Temporary] list that is pertinent." *Versaci, supra,* 403 F.2d at 253, 185 Ct.Cl. at 685;

*Nolte v. United States,* 177 Ct.Cl. 1069 (1966). In short, the question before the reevaluation PEB was whether plaintiff, *at the time of the PEB's consideration,* was fit to return to duty.

█ The test used to measure the validity of the PEB conclusion that plaintiff was fit to return to duty is whether it is based on substantial evidence viewed against the record as a whole. *Brozik v. United States,* 180 Ct.Cl. 546 (1967). Based on the present record, the only determination we can make is that there *is* substantial evidence supporting the PEB's determination. Since the decision reversing the PEB cannot be sustained, *see* Part 1, *supra,* we are compelled to concur with the PEB that plaintiff was, in fact, fit to return to duty. We so hold.

### 3. The Remedies

Given the fact that plaintiff was fit to return to duty, we must then determine what such a decision portends. Plaintiff's petition seeks reinstatement, back pay and records correction. Defendant counters that we cannot reinstate plaintiff or order back pay because of the nature of Craft's enlistment contract. However, both plaintiff and defendant mistake the nature of the Temporary List and the impact of a decision that a serviceman is fit to return to duty.

When on the temporary retired disability list, a serviceman is actually separated from the military. During this limbo status, the soldier receives disability pay. His situation is reevaluated at periodic intervals, and eventually a permanent decision is made. If the serviceman is found to be unfit, he will be permanently retired from the military. 10 U.S.C. § 1210 (1970). However, if the soldier is found fit for duty, the remedy is somewhat unusual, and its application here, to the best of our knowledge, is a matter of first impression. 10 U.S.C. § 1211 (1970) governs this instance and specifies:

> § 1211. *Members on temporary disability retired list: return to active duty; promotion*

(a) With his consent, any member of the Army or the Air Force whose name is on the temporary disability retired list, and who is *found to be physically fit to perform the duties of his* office, grade or rank under section 1210(f) of this title [periodic examinations], *shall* —

(3) *if an enlisted member* of a regular component, *be reenlisted in the regular grade held by him* when his name was placed on the temporary disability retired list *or in the next higher* regular enlisted grade.

[10 U.S.C. § 1211(a)(3) (1970)].

Under this statute, a serviceman found fit to perform his duties must be reenlisted.[5]

We realize that this situation is somewhat unique. Normally, reenlistment is a matter within the discretion of the Secretary of a given military branch. *See, e. g., Savio v. United States,* Ct.Cl. No. 28–75 (Order, October 17, 1975); *Austin v. United States,* 206 Ct.Cl. 719 *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *O'Callahan v. United States,* 451 F.2d 1390, 196 Ct.Cl. 556 (1971). However, in the case where an individual on the temporary disability retired list is found fit to return to duty, Congress has mandated that he "shall be reenlisted." This directive obviously proves of benefit both to the Government (in retaining quality military personnel) and to the individual concerned (in completing his active service in order to obtain retirement benefits).

■ In the case at bar, having determined that the unfavorable decision of the Council cannot be sustained and finding substantial evidence in the record to support the conclusion of the PEB that plaintiff was fit to perform the duties of his rank, we are compelled to apply 10 U.S.C. § 1211(a)(3) (1970) and restore plaintiff to active duty.

Finally, the sole remaining questions concern the date of the mandatory reenlistment and the length of such reenlistment period. The statute and regulations are silent as to such questions.

The Army, on May 31, 1973, improperly discharged plaintiff as permanently unfit for duty. Given the fact that plaintiff was fit to return to duty, we hold that plaintiff should have been reenlisted on this date instead of separated. Further, we determine that plaintiff was entitled to be reenlisted for a period at least equivalent to the time remaining on his contract when he was placed on the Temporary List. Plaintiff's latest reenlistment was for a period of six years on November 23, 1966. He had served two years, six months and six days at the time he was placed on the Temporary List, and some three years, five months and twenty-five days remained on this reenlistment contract. Therefore, we hold that the Army should have reenlisted plaintiff on May 31, 1973, for at least three years, five months, and twenty-five days. Such a term would expire in November 1976.

In summary, we cannot sustain the decision of the Council finding plaintiff unfit to return to duty from the temporary retired disability list. This unfavorable decision failed to enumerate the reasons for modifying a determination by the reevaluation PEB that plaintiff was fit to return to duty, and there is no evidence in the record upon which we can find that the Council's reversal comported with the narrow standards required by the regulations for overturning Evaluation Boards. On the other hand, there is substantial evidence in the record to support the conclusion of the PEB that plaintiff was fit to perform the duties of his rank. Plaintiff should have been reenlisted in the Army under the requirements of 10 U.S.C. § 1211, rather than separated. We reemphasize that our holding is not based upon the court's opinion of plaintiff's fitness, but upon our review of the applicable administrative decisions.

Accordingly, for the reasons stated above, plaintiff's motion for summary judgment is granted and defendant's cross-motion is denied. Plaintiff is entitled to recover on his claim and judgment is entered to that effect with the amount of recovery to be determined pursuant to our Rule 131(c).

---

**5.** Army Regulation 635–40, ¶ 7–11(b) mirrors the statute.

The Secretary of the Army is ordered to reenlist plaintiff (with his consent) in the rank of Sergeant First Class, E–7, for a period at least equal to three years, five months and twenty-five days, effective May 31, 1973, and to correct plaintiff's applicable records consistent with this opinion, pursuant to Rule 147(c) of the Rules of this court.[6]

---

**6.** Plaintiff is *entitled* to be reenlisted in the grade Sergeant First Class (E–7). However, we feel compelled to note that the statute which grants the right to such reenlistment also permits the Secretary, in his discretion, to reenlist plaintiff in *the next higher grade.* 10 U.S.C. § 1211(a)(3) (1970).