Betty Jo POPE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 738–87C.

United States Claims Court.

Aug. 8, 1988.

Betty Jo Pope, Brunswick, Ga., pro se.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Gregg A. Marchessault, Office of the Judge Advocate General, U.S. Army, of counsel.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This action came before the court on defendant's motion to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted, pursuant to RUSCC 12(b)(1) and 12(b)(4). Defendant's motion to dismiss is granted in part and denied in part.

### FACTS

In December 1977, plaintiff, Ms. Pope, was commissioned a first lieutenant in the Army Nurse Corps, United States Army Reserve. In January 1978, plaintiff entered active duty as a captain. In March 1979, plaintiff was admitted to a military hospital for psychiatric evaluation. Shortly thereafter, a medical board found plaintiff medically unfit with the diagnosis of schizophrenia, latent type.

In May 1979, an Army Physical Evaluation Board (PEB) reviewed plaintiff's case, and recommended that she be placed on the Temporary Disability Retired List (TDRL). Plaintiff concurred in the board's findings. Consequently, plaintiff was released from active duty in July 1979, and placed on the TDRL pursuant to 10 U.S.C. § 1202 (1976). In October 1981, an informal PEB reevaluated plaintiff's medical condition and found her unfit for duty. Then, in December 1981, a formal PEB examination found plaintiff fit for duty as a reservist with a diagnosis of mixed personality disorders; she was not, however, recommended for reinstatement to active duty. Plaintiff was advised of her right to reappointment for duty as a reservist and was removed from the TDRL in February 1982. Plaintiff, nonetheless, responded with a request for reappointment to active duty as a member of the Army Nurse Corps in the United States Army Reserves. The Army Nurse Corps Selection Board notified plaintiff that she was not selected for reappointment to active duty.

In June 1982, the Army honorably discharged plaintiff for failure to indicate an intent for reappointment to the inactive reserves. In November 1984, plaintiff petitioned the Army Board for Correction of Military Records (ABCMR) to correct her records and status. The ABCMR found that the medical evidence in the record indicated plaintiff was properly determined medically unfit when she was placed on the TDRL in 1979. While on the TDRL, plaintiff's same psychiatric impairment was reclassified as mixed personality disorder instead of schizophrenia. At that time, however, a mixed personality disorder was merely an administratively disqualifying impairment; it did not, unlike schizophrenia, result in a diagnosis of being medically unfit. The ABCMR concluded that plaintiff's removal from the TDRL in 1982 was proper. Accordingly, in August 1987, the ABCMR denied the relief sought by plaintiff because it could find no error or abuse of discretion in the treatment of plaintiff's case.

In this court, *pro se* plaintiff sought reversal of the ABCMR decision, correction of her military records, reinstatement to active duty status in the Army, back pay

and allowances totalling $100,000, and attorney fees. Alternatively, plaintiff sought disability retirement pay.

## DISCUSSION

The United States Claims Court's jurisdiction is derived from the Tucker Act, 28 U.S.C. § 1491 (1982). The Tucker Act permits an action to be maintained in this court only if the action is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This provision, however, does not create any substantive right enforceable against the United States for money damages. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The Tucker Act confers jurisdiction upon the court only when a substantive right exists. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). In money demands under the Tucker Act "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.* 178 Ct.Cl. at 605, 372 F.2d at 1007. The right conferred upon plaintiff must mandate compensation by defendant for the damage sustained. *Id.* 178 Ct.Cl. at 607, 372 F.2d at 1009. Accordingly, for jurisdiction to exist, the federal statutes invoked by plaintiff must confer a substantive mandatory right to monetary relief against defendant.

A. *Reinstatement, Back Pay and Correction of Plaintiff's Records*

■ Plaintiff alleged that pursuant to 10 U.S.C. § 1211 (1976) she had a right to be reinstated to active duty once found medically fit. Section 1211(a)(4) provides that once plaintiff was found to be fit for duty and removed from the TDRL, she was entitled, as a commissioned Reserve to "be reappointed ... as a Reserve for service in [her] reserve component...." Plaintiff contended the ABCMR decision affirming

the denial of reinstatement to active duty ought to be set aside and her military records corrected. Further, plaintiff alleged her right to reinstatement to active duty entitled her to back pay from the time of her release from the TDRL. In its motion to dismiss, defendant asserted that 10 U.S.C. § 1211 is not a money mandating statute because it does not give disabled reserve officers, which are subsequently determined fit for duty, the right to return to active duty and receive the mandated pay. Consequently, defendant contended that plaintiff had no substantive mandatory right to active duty pay, and thus this court lacked jurisdiction.

■ It is the court's view that although defendant's argument is for the most part correct, it fails to satisfactorily address whether this court has jurisdiction over plaintiff's claims of reinstatement, back pay and correction of her records. Generally, a proper claim for reinstatement and back pay may qualify as a substantive right to monetary relief. *See Testan*, 424 U.S. at 402, 96 S.Ct. at 955. In this case, however, the fact that plaintiff is a reserve officer complicates the jurisdictional issue and forces the court to consider, at least in part, more particular points of plaintiff's case.

It is well established that "[s]alary determinations wholly within an agency's discretion are beyond the scope of the Tucker Act...." *E.g.*, *Garbacz v. United States*, 228 Ct.Cl. 309, 320, 656 F.2d 628, 636 (1981). In the case at bar, however, it is not the salary determination which is challenged, rather the decision of whether to return a reserve officer to active duty. If plaintiff should have been reappointed to active duty status, she would be entitled to compensation. 37 U.S.C. § 204 (1976).

■ As defendant correctly contended, the Army has discretion in both releasing and reinstating a reserve officer from or to active duty. The statutory provisions of 10 U.S.C. § 681(a) (1976) provide that "the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty." Reinstatement is governed by 10 U.S.C. § 1211(a)(4) (1976), as previ-

ously discussed. Unlike a commissioned officer of a regular component who is entitled to be recalled to active duty pursuant to 10 U.S.C. §§ 1211(a)(1) and (a)(2) (1976), the provisions of section 1211(a)(4) governing reserve officers do not mention recall to active duty. Section 1211(a)(4) only grants reserve officers the right to be reappointed to their respective reserve component. Therefore, the court concludes that the Army has discretionary authority to choose whether or not to reinstate a reserve officer to active duty. *Cf. Craft v. United States*, 210 Ct.Cl. 170, 185–86, 544 F.2d 468, 476–77 (1976) (reenlistment is generally a matter within the discretion of the military, unless Congress specifically mandates otherwise as it did in 10 U.S.C. § 1211). As a result, plaintiff does not have a mandatory right to an appointment to active duty. However, this conclusion does not end the court's inquiry.

The fact that the Army has discretion in reinstating its reserve officers to active duty, does not automatically preclude this court from asserting jurisdiction. In *Best v. United States*, 10 Cl.Ct. 213, 215 (1986), defendant had concluded that when an agency or executive department had discretion to do or not do an act, then any resulting action by the agency or executive department was unreviewable by the court. This court, however, rejected that assertion in *Best* because it focused on the court's scope of review and not on the court's subject matter jurisdiction. In reviewing the present motion, the court again rejects a similar assertion made by defendant.

It is undisputed that this court has the jurisdiction to review discretionary actions of military departments concerning denial of disability retired pay, discharge of Army officers on active duty, determinations of whether a person is fit for duty, and correction of military records. *See e.g., Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977); *Ward v. United States*, 178 Ct.Cl. 210 (1967); *Hertzog v. United States*, 167 Ct.Cl. 377 (1964). In this case the court must determine whether, under 10 U.S.C. § 1211(a)(4), the court can review the ABCMR's affirmance of the Army Nurse Corp Selection Board's discre-

tionary decision to deny plaintiff's application for active duty. The Tucker Act confers jurisdiction upon the court when plaintiff alleges the existence of a right mandating compensation from the federal government. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 605, 372 F.2d 1007 (1967). Although plaintiff's reliance on 10 U.S.C. § 1211 for reinstatement to active duty is misplaced, plaintiff alleged she was entitled to active duty status. Active duty status mandates pay pursuant to 37 U.S.C. § 204. Thus, if the Army did act arbitrarily and capriciously in denying plaintiff reinstatement to active duty and if the ABCMR's decision was arbitrary or capricious, plaintiff may have a right to reinstatement to active duty.

■ According to the Administrative Procedure Act, 5 U.S.C. § 701(a) (1982), agency decisions are generally not reviewable if the relevant statute governing such decisions precludes judicial review. While the language in 10 U.S.C. §§ 1211 and 681 fails to expressly address judicial review, it does not preclude it. When a statute is silent on judicial review, courts recognize the basic presumption favoring review. *Action on Safety and Health v. FTC*, 498 F.2d 757, 760–61 (D.C.Cir.1974); *see Abbott Labs. v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Further, the party claiming an exception to the general rule of reviewability bears a heavy burden of demonstrating by clear and convincing evidence that Congress intended to restrict access to the courts. *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975) (citing *Abbott Labs.*, 387 U.S. at 141, 87 S.Ct. at 1511). Here, defendant has only made the conclusory statement that the court lacks jurisdiction to review the ABCMR decision because the Secretary has discretion in dealing with reserve officers.

Agency decisions are also not reviewable if agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). The legislative history of the Administrative Procedure Act indicates, however, that

even though a statute may vest discretion in an agency by law, plaintiff is not precluded from judicial review of the Army's actions if she claims there has been an abuse of discretion. 92 Cong.Rec. 2153–54 (1946), *reprinted in* Legislative History of the Administrative Procedure Act, 1944–46, at 310–11 (1946). Likewise, the Act specifies that a reviewing court should set aside agency findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (1982). Here, plaintiff alleged that the ABCMR's decision was arbitrary and capricious. Accordingly, the court believes that plaintiff has met the legislative requirement for reviewability of the ABCMR decision in this case.[1] *E.g., Armstrong v. United States,* 205 Ct.Cl. 754, 761 (1974).

In a motion to dismiss for lack of jurisdiction, the facts alleged in the complaint must be considered correct and if the nonmovant might prevail on any possible basis, the motion must be denied. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. In light of the APA's legislative history, *Armstrong* and *Scheuer,* this court concludes it has jurisdiction to review the ABCMR's decision to determine whether it was arbitrary and capricious in denying plaintiff's claim for reinstatement to active duty. This court also has jurisdiction over plaintiff's claims for back pay, *see Testan,* 424 U.S. at 402, 96 S.Ct. at 955, and correction of her military records. 28 U.S.

C. § 1491(a)(2). Accordingly, defendant's 12(b)(1) motion to dismiss plaintiff's claims for reinstatement, back pay and correction of military records is denied.

Defendant also moved to dismiss this action for failure to state a claim upon which relief can be granted. A claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The parties in this case have not stipulated to all relevant facts. In addition, there is no insuperable legal bar to relief proposed against plaintiff. Therefore, plaintiff may prevail on her claims for reinstatement, back pay and correction of her records if she can persuade the court that the ABMCR's decision was arbitrary and capricious in denying her the requested relief. Thus, with respect to the above mentioned claims defendant's 12(b)(4) motion must also be denied.[2]

### B. *Disability Retired Pay*

■ Plaintiff pled in the alternative, although not until in her response brief, that she is entitled to disability retired pay because the Army contends she is still subject to psychotic episodes. It has long been established that a claim for disability retired pay does not accrue until the service member has been granted or denied such benefits by a board competent to take final action on such matters. *Friedman v. United States,* 159 Ct.Cl. 1, 34–35, 310 F.2d 381, 401–02 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). It is not the province of this court to factually determine, *ab initio,* whether plaintiff was unfit for military service at the time of

---

1. The court is not grounding jurisdiction in the Administrative Procedure Act; it is cited to explain that the Act does not preclude jurisdiction in this case. Although factually rather unique, in the absence of contrary authority the court sees no reason to treat the case at bar any differently than it would, for example, a typical military case dealing with review of a discharge by the ABCMR of a regular Army officer who is determined physically fit and denied disability retired pay.

2. Plaintiff attached several exhibits to her complaint, including the complete ABCMR decision. The court, however, declines to convert defendant's 12(b)(4) motion to dismiss into one for summary judgment because the exhibits were not considered against the merits of plaintiff's claims. RUSCC 12(b)(4).

his or her release. *De Cicco v. United States*, 230 Ct.Cl. 224, 230–33, 677 F.2d 66, 70–72 (1982). The responsibility for determining fitness for service is that of the armed forces, not of the judiciary. *See Gilligan v. Morgan*, 413 U.S. 1, 10–11, 93 S.Ct. 2440, 2445–46, 37 L.Ed.2d 407 (1973); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983). Accordingly, this court's scope of review does not include substituting or subplanting its judgment of factual issues for that of the military merely because reasonable minds could differ on evaluating the same evidence. *Heisig*, 719 F.2d at 1156. This court's scope of review is limited to whether the Army Retirement Board, or some other properly authorized board's action was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced." *Id.* (quoting *Clayton v. United States*, 225 Ct.Cl. 593, 595 (1980)) (brackets in original). In short, this court is not the forum in which the initial factual determination of disability retired pay is to be made.

The record fails to show whether plaintiff ever submitted a claim for disability retired pay to the Army Retirement Board or any other properly authorized board. Plaintiff agreed with the original 1979 finding that she was not fit for duty; at that time she accepted, rather than requested, temporary disability benefits. She also concurred with the subsequent determination in 1981 that she was fit for duty. Only after plaintiff has requested and been granted or denied disability retired pay by an Army board competent to make findings and take final administrative action on such matters, can this court review plaintiff's

claim. *See Dzialo v. United States*, 230 Ct.Cl. 506, 511, 677 F.2d 873, 876 (1982); *Kingsley v. United States*, 172 Ct.Cl. 549 (1965); *Woodard v. United States*, 167 Ct.Cl. 306 (1964). Consequently, plaintiff's claim for disability retired pay is premature, and must be dismissed for lack of jurisdiction.

C. *The 1979 PEB Decision Placing Plaintiff On the TDRL*

Plaintiff also alleged in her complaint that the ABCMR erroneously affirmed the 1979 Physical Evaluation Board's decision to place her on the TDLR. Defendant moved to dismiss plaintiff's claim as time barred by the six year statute of limitations in 28 U.S.C. § 2501 (1976). Without addressing the merits of this allegation, the court addresses the statute of limitations issue.

 Normally in this court, a claim against the United States first accrues on the date when all the events have occurred which fix the liability of the government and entitle the claimant to institute an action. *E.g., Sellick v. United States*, 222 Ct.Cl. 679, 680 (1980). However, when Congress has entrusted the military boards with the task of determining whether a serviceman is fit for duty, the claim accrues upon final action by the proper board, not upon release from active duty. *Friedman*, 159 Ct.Cl. at 8–9, 13, 310 F.2d at 385, 389.[3] In such a case, a later review by the ABCMR of a proper board's decision does not toll the statute of limitations. *Bruno v. United States*, 214 Ct.Cl. 383, 386, 556 F.2d 1104, 1105–06 (1977) (citing *Friedman*, 159 Ct.Cl. at 14–15, 310 F.2d at 390). Yet, if the board's decision itself suggests in its findings that the decision is tentative, or where the board withholds a final decision pending consideration of new

3. Inasmuch as plaintiff contests the entire ABCMR decision, the court believes that it has jurisdiction over plaintiff's claims which were encompassed by the ABCMR decision if the claims were filed timely in this court. Thus, at this time the court will only determine whether plaintiff's claim contesting the 1979 PEB decision to place her on the TDRL is barred by the statute of limitations. In the event that plaintiff's claim is one for wrongful discharge, the

analysis in *Friedman* does not apply because wrongful discharge claims normally accrue on the date of discharge. *E.g., Parker v. United States*, 2 Cl.Ct. 399, 403 (1983). Placement on the TDRL, however, does not constitute a discharge. *United States v. Bowie*, 34 C.M.R. 808 (A.F.1964). Plaintiff was effectively discharged in June of 1982. Thus, a claim for wrongful discharge would be timely filed in this case.

evidence, or expressly invites, on the record, that the claimant seek a reopening at a later time, then, as a matter of law the board's decision is not final and the statute of limitations does not begin to run. *Id.* at 387, 556 F.2d at 1106 (explaining *Friedman,* 159 Ct.Cl. 1, 310 F.2d 381). The physical evaluation board (PEB) is a proper and competent tribunal whose decision, if final, is adequate to trigger the running of the statute of limitations. *Fuller v. United States,* 14 Cl.Ct. 542, 544 (1988). In order to determine if the 1979 PEB decision to place plaintiff on the TDRL triggered the statute of limitations, a brief summary of pertinent facts is essential to determine which PEB decision was its final decision.

On May 3, 1979, an informal PEB found plaintiff unfit for duty and recommended that she be placed on the TDLR. Although plaintiff agreed with the PEB's findings and waived her right to a formal hearing, the PEB recommended reexamination during November 1980. On October 16, 1981, an informal PEB again found plaintiff unfit for duty. Plaintiff disagreed with the PEB's findings and requested a formal board evaluation with counsel of her choice. On December 4, 1981, a formal PEB found plaintiff fit for duty. Thus, the military subsequently removed plaintiff from the TDRL. Plaintiff filed her complaint in this court on December 3, 1987.

In response to defendant's statutory bar argument, plaintiff asserted that her claim contesting the 1979 PEB decision was timely filed because it accrued on December 4, 1981, when the formal PEB found her fit for duty.[4] Whether the December 4, 1981 formal PEB decision is final, and the 1979 and 1981 informal PEB decisions are only tentative, depends in large measure on what the decisions themselves held. The court is unaware of cases specifically addressing the legal differences between a formal and an informal PEB decision. However, the nature of the TDRL in general and of each PEB decision in particular help determine which decision should be considered final for statute of limitation purposes.

■■■ Although plaintiff in this case waived her right to an initial formal hearing, the 1979 informal PEB decision itself recommended reexamination of plaintiff's case a year later. Once on the TDRL, a member's situation is reevaluated at periodic intervals, and eventually a permanent decision is made. *Craft,* 210 Ct.Cl. at 185, 544 F.2d at 476; 10 U.S.C. § 1210 (1976). If at that time the member is found to be unfit, she will be permanently retired from the military. *Craft,* 210 Ct.Cl. at 185, 544 F.2d at 476; 10 U.S.C. § 1210. On the other hand, if she is found fit for duty she will be reenlisted according to her particular circumstances. *Craft,* 210 Ct.Cl. at 185–86, 544 F.2d at 476; 10 U.S.C. § 1210. On October 16, 1981, the military reopened plaintiff's case with another informal PEB evaluation. When the PEB again determined that plaintiff was unfit for duty, plaintiff requested a formal PEB hearing which led to the December 4, 1981 decision. If an informal PEB decision is adverse, the claimant has a right to ask for a formal PEB hearing. *E.g., Hrdina v. United States,* 5 Cl.Ct. 17, 20 (1984). Plaintiff's right to a formal hearing is based on 10 U.S.C. § 1214 (1976) which reads, "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." *Accord Fuller,* 14 Cl.Ct. at 544. It is the court's opinion that such a right expressly invites the claimant to seek a reopening of an informal decision at a later time, and thus precludes any informal PEB decision from being final. *See Bruno,* 214 Ct.Cl. at 387, 556 F.2d at 1106 (explaining *Fried-*

---

**4.** When jurisdiction is questioned, as defendant has done here, the party asserting jurisdiction has the burden of demonstrating that the court has jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). Plaintiff did not include any of the PEB decisions in her complaint; and, she countered defendant's motion to dismiss by making the conclusory statement with regard to when her claim accrued. Yet, plaintiff did file a Judge Advocate General and military commander's review of all the PEB decisions which factually substantiated her assertion. In giving liberal allowance to plaintiff because she is *pro se,* the court believes plaintiff has met her burden of demonstrating facts sufficient to defeat dismissal grounded on a statutory bar.

*man*, 159 Ct.Cl. at 1, 310 F.2d 381). The formal PEB decision found plaintiff fit for duty due to a correction in classification of her medical condition. It appears to the court that both the May 1979 and October 1981 informal PEB decisions were tentative, that they withheld a final decision pending consideration of new evidence, and expressly invited plaintiff, if she so desired, to seek a reopening of her case. *Id.* Thus, the December 4, 1981 formal PEB decision which found plaintiff fit for duty constituted a final decision because plaintiff was subsequently removed from the TDRL, given the option to be reappointed as a reservist, and no longer subject to reevaluations. The court concludes that plaintiff's claims encompassed by the formal PEB decision accrued on December 4, 1981, the date of the final PEB decision. Accordingly, plaintiff's claim, which contested the ABCMR's affirmance of the 1979 PEB decision to put her on the TDRL, was timely filed, and defendant's motion to dismiss on grounds of a statutory bar is denied.

### CONCLUSION

Defendant's motion to dismiss plaintiff's claims for reinstatement, back pay and correction of records, is denied. Plaintiff's claim for disability retired pay is dismissed for lack of jurisdiction. Defendant's motion to dismiss plaintiff's claim to reverse the 1979 PEB decision which placed plaintiff on the TDLR is denied.

IT IS SO ORDERED.