769

Nancy L. FABING, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 378–88C.

United States Claims Court.

Nov. 29, 1989.

Gary L. Napier, Louisville, Ky., for plaintiff.

Gordon D. Kromberg and James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Douglas E. Wade, Office of the Judge Advocate General, Dept. of the Air Force, of counsel.

OPINION

MARGOLIS, Judge.

This military pay case is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. After a careful review of the entire record, and after hearing oral argument, the court concludes that the decision of the Air Force Board for Correction of Military Records (BCMR) denying plaintiff's request for the correction of her disability rating was not arbitrary and capricious, is supported by substantial evi-

dence in the record, and is not otherwise contrary to law. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied.

## FACTS

The plaintiff, Nancy L. Fabing, first enlisted in the Air Force on October 19, 1967. On March 19, 1970, she was granted a hardship discharge. On August 14, 1971, the plaintiff enlisted in the Kentucky Air National Guard. The plaintiff was a full-time uniformed technician until she entered the Active Guard and Reserve Program as an active duty member of the military. She remained in the Kentucky Air National Guard as an active duty guardsman until her medical discharge on December 22, 1986. At that time, she had attained the rank of Master Sergeant and had accumulated over 17 years of satisfactory service.

During the summer of 1983, the plaintiff, while on exercises at Nellis Air Force Base, Nevada, sustained an injury to both knees. The injury occurred while performing military duties on the installation. Thereafter, the plaintiff experienced chronic and increasingly severe pain and swelling in both knees. Finally, in 1986, because of her occupational disability, plaintiff was referred to a medical evaluation board (MEB) to determine whether she was medically fit for continued service.

The MEB met on June 5, 1986 at Ireland Army Hospital, Fort Knox, Kentucky and diagnosed her condition as degenerative arthritis, chondromalacia (wearing away of the cartilage) of the patella (kneecap), bilateral, with the date of origin as 1983. By an addendum to the report dated August 27, 1986, the MEB added the diagnosis of subluxable (partial dislocation) patellae, with the date of origin as 1983. Because the June 5, 1986 MEB was convened by the Army, the results were forwarded to an Air Force facility for review and processing. On July 18, 1986, an MEB at Scott Air Force Base, Illinois, concurred with the findings of the MEB at Fort Knox. Both MEBs found the plaintiff unfit for worldwide duty and recommended referral to a physical evaluation board (PEB).

The PEB assigns disability ratings to the injuries of service personnel. These ratings "represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 C.F.R., ch. 1, § 4.1; Air Force Regulation (AFR) 35–4 Attachment 2, part I, ¶ 1. Air Force Regulation section 35–4, chapter 1, paragraph 1–8 requires the PEB to rate injuries according to the Veterans' Administration Schedule for Rating Disabilities (VAC) contained in 38 C.F.R., ch. 1, § 4.71(a). The VAC specifies the following:

5003 Arthritis, degenerative ...

> With X–ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations ............... 20%

* * *

5257 Knee, other impairment of:
Recurrent subluxation or lateral instability:
Severe .................... 30%
Moderate .................. 20%
Slight .................... 10%

38 C.F.R. § 4.71(a).

On August 5, 1986, an informal PEB convened at Randolph Air Force Base, Texas. The PEB found the plaintiff unfit for service due to physical disability and diagnosed her condition as "bilateral chondromalacia with subluxable patellae, status post Dec. 85 right knee arthrotomy, shaving, medial reefing and lateral release with residual sub-patellar crepitation." *See* AF Form 356, Appendix to Defendant's Motion for Summary Judgment at 163 (hereinafter "Appendix"). The PEB assigned a VAC rating of 20% under the combination code

5014–5003. The plaintiff took exception to the PEB's assignment of a 20% disability rating, and requested that a formal PEB convene to evaluate her case.

On September 29, 1986, a formal PEB convened at Lackland Air Force Base, Texas. The PEB concluded:

> It appears the underlying problem is developmentally abnormal Q angles which has accommodated patellar subluxation followed by chondromalacia with the latter initially becoming symptomatic during active duty. Though the 1983 injury is associated with first subjective manifestations, mechanics of the injury are such that it is more likely its role was contributory rather than primary cause. In any event, the nature and chronology of clinical events in context of member's continuous period of service render the EPTS [Existed Prior To Service] factor nonascertainable.
>
> However, rating under VAC 5257 is not believed to be appropriate since such pertains to subluxation and instability of the tibiofemoral articulation, which is anatomically and functionally intact in this instance. Accordingly, the Board concurs with the Informal PEB's recommended rating of chondromalacia of the kneecaps under VAC 5003.
>
> In absence of osteomalacia per se, the Board favors 5099 co-designation for the degenerative cartilaginous changes. Bilateral factor is not applicable under 5003.

Appendix at 24. The code the formal PEB assigned to the plaintiff's condition was 5099–5003. *See* AF Form 356, Appendix at 23. The PEB recommended medical discharge under 10 U.S.C. § 1203 with severance pay and a disability rating of 20%. On November 19, 1986, the Secretary of the Air Force directed that the plaintiff be discharged and receive severance pay with a disability rating of 20%. The plaintiff was accordingly discharged on December 22, 1986.

On May 15, 1987, the plaintiff filed an application with the BCMR requesting that her discharge certificate be corrected to reflect a disability rating under VAC 5257

of 52%. The plaintiff would thus be entitled to disability retirement pay under 10 U.S.C. § 1201, which requires a minimum rating of 30%. At the request of the BCMR, the Air Force Office of the Surgeon reviewed the plaintiff's case. The Surgeon advised the BCMR that the formal PEB's decision was correct and that VAC 5257 was inappropriate. The Surgeon's opinion letter stated:

> Findings and recommendations of the PEB were sustained at all levels of review and approval and are well supported by the evidence of record. There is no evidence of error or irregularity in the processing of her case.... The contention that her condition should be rated under VA diagnostic code 5257 is totally without merit.... Attachment 2 of AFR 35–4 describes Air Force policy on applying the VA Schedule for Rating Disabilities. In this attachment the diagnostic codes 5255 through 5262 are recognized as applying to the long bones of the lower extremity. Subluxation under d.c. 5257 specifically refers to abnormal motion of the tibalfemoral articulation and not to the patellae which are small sesmoid bones (not long bones or major weight bearing structures).

Appendix at 222–23. After "a thorough review of the documentation submitted and the brief provided by counsel," the BCMR found that the plaintiff did not provide any evidence to support the contention that she should be rated under disability code 5257, and denied her petition. Record of Proceedings, Air Force Board For Correction of Military Records, Appendix at 226.

The plaintiff contends that the decision of the Secretary of the Air Force to discharge her with a disability rating of 20% and severance pay, rather than a disability rating of 65% (calculated by combining codes 5003 and 5257) and disability retirement pay, was erroneous. The plaintiff argues that the decision to rate her as 20% disabled under disability code 5099–5003 was a misapplication of the VAC, and therefore, was arbitrary, capricious, not supported by substantial evidence and contrary to law. She requests that the court order the BCMR to correct her records to

reflect a disability rating of 65% and to award her disability retirement pay and benefits. The defendant maintains that the Air Force acted reasonably, in compliance with applicable law and regulations, and relied on substantial evidence in the record.

## DISCUSSION

### I. Standard of Review

The standard of review in military pay cases is well established. The decision of the BCMR cannot be overturned unless the plaintiff can show that it was arbitrary, capricious, not based on substantial evidence, or contrary to law. *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *O'Neil v. United States*, 6 Cl.Ct. 317, 319 (1984). This deferential standard was articulated by the Court of Claims in *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979), which stated:

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.
>
> \* \* \* \* \* \*
>
> Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards.

*Id.*, 219 Ct.Cl. at 298, 302, 594 F.2d at 811, 813–14 (citations omitted).

The plaintiff must prove by clear and convincing evidence that the Air Force's decision was erroneous. *O'Neil*, 6 Cl.Ct. at 319; *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). The interpretation of a regulation by the body charged with administering it is entitled to judicial deference. *United States v. Clark*, 454 U.S. 555, 565, 102 S.Ct. 805, 812, 70 L.Ed.2d 768 (1982); *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). This is especially true "when that interpretation has been followed consistently over a long period of time." *Clark*, 454 U.S. at 565, 102 S.Ct. at 811–12. "Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814.

### II. The Disability Rating .

■ The plaintiff argues that the MEB, PEB and BCMR misinterpreted the term "knee," as it is used in VAC 5257. The plaintiff contends that the interpretation of "knee," as used in that code should be consistent with its ordinary meaning and include the patellae in addition to the tibiofemoral articulation (joint of the long bones of the leg). The court concludes, however, that the Air Force's decision not to include disabilities involving the patellae under VAC 5257 was not erroneous. The BCMR's interpretation of 5257—that "knees" applies only to the meeting of the long bones of the lower extremities, has been employed for over 20 years, and has remained unchanged in that time. *See* DOD Directive 1332.18 (Sept. 9, 1968); DOD Directive 1332.18 (Feb. 25, 1986); AFR § 35–4 Attachment 2. In addition, the BCMR sought the advice of the Air Force Surgeon who referenced the DOD directive and agreed that 5257 applied only to the tibiofemoral articulation. The decision of the BCMR with respect to its interpretation of 5257, therefore, is not arbitrary or capricious, or or contrary to law, rule or regulation.

The plaintiff also asserts that DOD Directive 1332.18 and AFR section 35–4 Attachment 2 are not exclusive since the in-

structions contained therein do not necessarily preclude application of 5257 to subluxation of the kneecaps resulting in chondromalacia. Such reasoning, while logical, does not render the BCMR's decision arbitrary or capricious. The application of VAC 5257 is a matter of interpretation that has been entrusted primarily to the military, and the court cannot substitute its judgment for that of the military when the military decision has a reasonable basis and is not otherwise contrary to law.

■ The plaintiff further argues that 5257 must be interpreted to include subluxation of the patellae since there is no other VAC code that specifically covers that condition. The VAC does not, however, specifically cover every conceivable disease and disorder. *See* 38 C.F.R. § 4.21. When a PEB, MEB or BCMR encounters a condition that is not specifically listed in the VAC, the regulations permit rating by analogy. This system permits the evaluator to rate the unlisted disease or condition by referencing a similar, listed disease or condition. This is precisely what was done in this case. By assigning a co-designation of 5099 ("Bones, Joints, and Muscles, Other Disease of"), the military rated the plaintiff's condition by analogy to VAC 5003, degenerative arthritis.

The plaintiff urges, however, that the military erred in rating her condition by analogy because VAC 5257 specifically mentions both subluxation and "knees." The plaintiff observes that the Air Force's regulations require that where a condition is clearly listed, the BCMR cannot assign a rating lower than that provided in the VAC for the specified condition, and may not rate by analogy. *See Hordechuck v. United States*, 144 Ct.Cl. 492, 496 (1959). Thus, the plaintiff argues that the decision to rate by analogy was contrary to law. Once again, however, the gravaman of this argument is that the military should have assigned VAC 5257, which decision to the contrary, the court has already determined to be proper. The BCMR's decision was supported by substantial evidence in the record, and was consistent with the findings of the two MEBs, the PEB and the Air Force Surgeon.

In the alternative, the plaintiff argues that if the BCMR properly rated by analogy, it would have been more appropriate to analogize to VAC 5257. Because 5257 carries a higher rating, plaintiff asserts that the BCMR was bound by regulation to apply that higher rating. Section 4.7 states "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7.

■ In order to apply section 4.7, two criteria must be satisfied. First there must be a legitimate question as to which of the two possible codes to apply. The evaluation boards and the BCMR concluded that VAC rating 5257 was inapplicable because of the longstanding procedure of applying that rating only to the long weight bearing bones of the leg. Assuming, *arguendo*, that the BCMR requested the opinion of the Surgeon because it thought that a legitimate question existed, the second criterion of section 4.7 calling for the nearest approximation, still allows the BCMR to apply the lower rating if it finds that the disability more closely approximates the lower VAC rating. The BCMR concurred with the evaluation boards that VAC 5003 was the closest approximation of the plaintiff's condition. That decision is supported by the ample medical evidence and has a reasonable basis in the record. As such, the decision of the BCMR was not arbitrary or capricious. *See Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977). This court will not substitute its own judgment for that of an expert administrative body charged by law with the performance of the evaluation and rating function, even if the court might in the first instance have reached a different result.

■ Finally, the plaintiff challenges her rating on the grounds that the BCMR failed to articulate reasons for the decision to adopt the rating of the formal PEB. The plaintiff contends that the BCMR's

774

decision was conclusory and lacking in analysis. The plaintiff is correct that the failure to adequately explain the basis of a decision will not withstand judicial scrutiny. *O'Neil*, 6 Cl.Ct. at 319; *Istivan v. United States*, 231 Ct.Cl. 671, 676, 689 F.2d 1034, 1038 (1982). However, "if the court can discern from the record that the Secretary had sufficient evidence before him to reach the conclusion he did, it must hold, based upon its limited scope of review, that the Secretary did not act arbitrarily or capriciously." *O'Neil*, 6 Cl.Ct. at 320. The BCMR had abundant medical evidence before it, in addition to the evaluations of two MEBs, a PEB and the Air Force Surgeon. The BCMR adopted the conclusions of the formal PEB, which had, consistent with prior practice, explained that VAC 5257 applies only to disabilities affecting the long weight bearing bones of the leg, which are not affected by the plaintiff's disability. The fact that the BCMR did not reiterate this conclusion at length does not render its decision arbitrary or capricious.

### CONCLUSION

The court concludes that the BCMR's decision not to change the plaintiff's disability rating was not arbitrary or capricious, was based on substantial evidence in the record, and was not otherwise contrary to law. The court is not without sympathy for the plaintiff for the loss of her occupation and for the painfulness of her disability. The deferential standard of review leaves the court with little leeway when the military acts within the law. As the Court of Claims recognized, " 'a person can be too disabled to continue work, but not disabled enough to qualify for disability retirement.... This may well be an unfortunate result, but it is provided for by present laws and regulations.' " *Polos v. United States*, 223 Ct.Cl. 547, 562, 621 F.2d 385, 393 (1980) (citing *Piccone v. United States*, 186 Ct.Cl. 752, 762–63, 407 F.2d 866, 872 (1969)). Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.